## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **XAVIER AMBLER, SR., and MARITZA** | § | |
| **AMBLER, individually, on behalf of all** | § | |
| **wrongful death beneficiaries of JAVIER** | § | |
| **AMBLER, II, on behalf of the ESTATE OF** | § | |
| **JAVIER AMBLER, II, and as next friends of** | § | |
| **J.R.A., a minor child; and MICHELE BEITIA,** | § | |
| **as next friend of J.A.A., a minor child** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO 1:20-01068-LY** |
| | § | **JURY DEMANDED** |
| **WILLIAMSON COUNTY, TEXAS,** | § | |
| *Defendant*. | § | |

### DEFENDANT WILLIAMSON COUNTY, TEXAS'
### MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant WILLIAMSON COUNTY,

TEXAS ("County") files this Motion to Dismiss the Original Complaint of Plaintiffs Javier

Ambler, Sr., Maritza Ambler, and Michele Beitia (collectively, "Plaintiffs"), and will

respectfully show the Court as follows:

### I.        INTRODUCTION

Plaintiffs' Original Complaint ("Complaint") fails to state any claim upon which relief can

be granted under Federal Rule of Civil Procedure 12(b)(6).  This matter arises from Decedent

Javier Ambler, II's ("Ambler") arrest and interactions with law enforcement officers, specifically

two (2) non-defendant deputies from the Williamson County Sheriff's Office ("WCSO").  Ambler

fled from the WCSO deputies after the deputies appropriately attempted to stop Ambler for a traffic

violation.  Rather than comply with the deputies' attempted appropriate detention, Ambler fled

and led the deputies on a twenty (20)-minute chase, culminating with Ambler losing control and

crashing his vehicle.  When the deputies arrived at the scene of the crash, they attempted to restrain

and handcuff Ambler, who continued to improperly resist.  Plaintiffs generally allege that the deputies used excessive force when attempting to restrain Ambler and that such force led to his death.  Plaintiffs assert the following federal causes of action against the County: (1) a Fourth Amendment *Monell* claim pursuant to 42 U.S.C. § 1983 ("Section 1983"); and (2) a claim under Title II of the Americans with Disabilities Act ("ADA").

As fully briefed below, Plaintiffs fail to sufficiently plead claims for which relief can be granted, and all of their causes of action against the County are subject to dismissal.  Regarding their first cause of action, Plaintiffs' allegations regarding two (2) purported County policies and customs do not satisfy the required elements for *Monell* liability.  Plaintiffs do not offer any allegations to demonstrate a direct causal connection between the alleged violations of Ambler's constitutional rights and the purported County policy of engaging in police chases to create "entertaining video" for the reality television program Live PD.  Plaintiffs also do not offer allegations of a pattern of sufficiently similar constitutional violations to establish a County policy or custom of using excessive force to create "entertaining video" for Live PD.

Furthermore, even assuming Ambler's obesity is a qualifying disability for purposes of the ADA, Plaintiffs' ADA cause of action fails for three (3) independent reasons.  First, as a matter of law, Plaintiffs do not offer any allegations to overcome the *Hainze* exigent circumstances exception to Title II of the ADA, which holds that Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents prior to the officer's securing the scene and ensuring that there is no threat to human life.  Second, even if Title II was applicable, Plaintiffs fail to satisfy the *prima facie* case of their ADA cause of action because there are no allegations that any claimed exclusion, denial of benefits, or discrimination was **by reason of** Ambler's alleged disability.  Lastly, even if the ADA could apply to the circumstances here—

which as a matter of law it cannot—publicly available body camera footage from the Austin Police Department (which underlies the central allegations in Plaintiffs' Complaint) depicts that WCSO deputies used two (2) handcuffs (or "double handcuffs") to accommodate Ambler's size when restraining him, contrary to the claims in Plaintiffs' Complaint.

Plaintiffs simply do not allege any facts which state plausible claims for relief against the County. As such, dismissal is warranted, and the County respectfully requests that the Court grant its Motion to Dismiss.

## II.   FACTUAL BACKGROUND[1]

Ambler was a forty (40)-year old male, weighing approximately four hundred (400) pounds.[2] On March 28, 2019, around 1:23 a.m., Ambler was driving in suburban Williamson County.[3] When he drove passed WCSO Deputy JJ Johnson ("Deputy Johnson"), Ambler did not dim his vehicle's high beams.[4] Deputy Johnson attempted a traffic stop, but Ambler did not pull

---

[1] Although the County denies almost all of Plaintiffs' allegations, the factual allegations in their Complaint are taken as true for purposes of this Motion only. Additionally, the County relies on body camera footage from an Austin Police Department officer who was present during a portion of the incident at issue. This body camera footage was made public by the Austin Police Department and posted on the internet by local news station Fox 7 Austin. The video can be found on the news station's website at: https://www.fox7austin.com/video/692989. Because the body camera footage is a matter of public record and central to Plaintiffs' claims, the Court may properly take judicial notice of it and consider it with this Motion. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 30, 322 (2007) (holding that when reviewing a motion to dismiss, a district court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (internal citations omitted); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (holding that "the district court took appropriate judicial notice of publicly available documents and transcripts produced by the FDA, where were matters of public record directly relevant to the issue at hand."). A copy of the body camera footage is attached here as Exhibit A.
[2] Pls.' Compl., Dkt. 1, ¶ 117.
[3] *Id.* at ¶¶ 115–116.
[4] *Id.* at ¶ 121.

over.[5]   Instead, he fled, and a chase ensued.[6]   Deputy Johnson reported the chase over the intradepartmental radio, and Deputy Zachary Camden ("Deputy Camden") responded to assist.[7]

Ambler fled from the Deputies for over twenty (20) minutes and led them into Austin, Texas.[8]   While fleeing from the Deputies, Ambler crashed his vehicle multiple times, however, was able to continue fleeing.[9]   The pursuit ultimately ended when Ambler lost control and crashed his vehicle once again.[10]

Once on the scene of the crash, Deputy Johnson exited his vehicle, drew his handgun, and instructed Ambler to exit his vehicle.[11]   When Ambler exited his vehicle, Deputy Johnson holstered his handgun and drew his Taser instead.[12]   Deputy Johnson then instructed Ambler to get on the ground.[13]   When Ambler did not fully comply, Deputy Johnson deployed his Taser.[14]

About this time, Deputy Camden arrived on scene to assist Deputy Johnson.[15]   Following Ambler's crash, and because of Ambler's flight and reckless public endangerment, Deputy Johnson and Deputy Camden instructed Ambler to get on the ground, lay on his stomach, and put his hands behind his back so that he could be restrained with handcuffs.[16]   Ambler did not comply, and he actively resisted the Deputies' efforts to restrain him.[17]   In accordance with the applicable

---

[5]  *Id.* at ¶ 122.

[6]  *Id.*

[7]  *Id.* at ¶ 128.

[8]  *Id.* at ¶¶ 131, 135.

[9]    *See* Ex. A, Austin Police Department Body Camera Footage, also available at https://www.fox7austin.com/video/ 692989, at 0:14–0:25, 9:00–9:33.

[10]  Pls.' Compl., ¶ 137.

[11]  *Id.* at ¶ 143.

[12]  *Id.* at ¶¶ 144–147.

[13]  *Id.* at ¶ 150.

[14]  *Id.* at ¶¶ 151–153.

[15]  *Id.*

[16]  *Id.* at ¶¶ 158–191; Ex. A, Austin Police Department Body Camera Footage, at 1:30–3:30.

[17]  *See id.*

use of force procedures, the Deputies then used the Taser four (4) times to gain compliance, but Ambler again continued to resist their efforts to restrain him.[18]  Although Ambler claimed to have adverse health conditions during the struggle, he nevertheless continued to resist the Deputies' efforts to restrain him, which resulted in the escalation of the struggle.[19]  During the struggle, an Austin Police Department officer arrived on scene and assisted the Deputies with restraining Ambler.[20]  They ultimately succeeded in handcuffing Ambler behind his back.[21]  Contrary to Plaintiffs' allegations, the Austin Police Department body camera footage shows that two (2) sets of handcuffs were used to restrain Ambler due to his physical stature—one (1) set linked to the other to provide additional distance between Ambler's wrists.[22]

After being restrained, Ambler became nonresponsive.[23]  Again, contrary to Plaintiffs' allegations, the Austin Police Department body camera footage shows that Emergency Medical Services ("EMS") was called within twenty (20) seconds from the moment Ambler was handcuffed.[24]  The Deputies and/or other law enforcement officers on scene immediately began offering aid, checking for breathing and a pulse, and performing sternum rubs.[25]  When officers could not find a pulse, they unhandcuffed Ambler, initiated CPR, and continued life-saving measures until EMS arrived.[26]  Ambler was taken to a local hospital, where he later passed away.[27]

At the time of this incident, the WCSO was one (1) of multiple law enforcement agencies

---

[18]  *See id.*
[19]  *Id.*
[20]  *See* Ex. A, Austin Police Department Body Camera Footage, at 1:30–3:30.
[21]  *Id.*; Pls.' Compl., ¶ 191.
[22]  *See* Ex. A, Austin Police Department Body Camera Footage, at 3:08–3:32, 5:40–5:58.
[23]  *Id.* at 3:30–3:50.
[24]  *Id.*
[25]  *Id.* at 3:50–10:30.
[26]  *Id.*
[27]  Pls.' Compl., ¶¶ 198–200.

appearing on the television reality program "Live PD."[28]  As part of the program, Live PD producers and camera operators ride along with law enforcement officers.[29]  Both Deputy Johnson and Deputy Camden were accompanied by Live PD camera crews on March 28, 2019.[30]  Although the camera crews allegedly filmed the law enforcement officers' interactions with Ambler, the incident did not air on the program and Live PD's recordings are apparently no longer available.[31]

## III.   ARGUMENTS & AUTHORITIES

### A.   Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6) is Appropriate

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

However, the complaint must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

---

[28] *Id.* at ¶ 120.
[29] *Id.* at ¶ 18.
[30] *Id.* at ¶ 120.
[31] *See id.* at ¶¶ 211–212.

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (modification in original).  The complaint "must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.  *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 420–21 (5th Cir. 2006) (internal citations omitted).  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Id.* at 421 (internal citations omitted).

To the extent Plaintiffs' factual allegations are contradicted by the Austin Police Department body camera footage (that is public record and central to Plaintiffs' Complaint), the Court must reject Plaintiffs' allegations and rely on the facts depicted in the video recordings.  *Poole v. City of Shreveport*, 691 F.3d 624, 630–31 (5th Cir. 2012) ("This court has construed the Supreme Court's instructions [in *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)] to require courts to reject a plaintiff's description of the facts where the record discredits that description [and] instead consider the facts in the light depicted by the videotape.") (internal citations omitted).

**B.**     **Plaintiffs Fail to Sufficiently Plead a Section 1983 *Monell* Cause of Action**

Plaintiffs' claim for *Monell* liability against the County fails as a matter of law because they do not allege sufficient facts to demonstrate that a County policy or custom was the moving force behind any alleged constitutional violation.  The County policies and customs alleged by Plaintiffs fall within two (2) categories: (1) a custom of engaging in police chases to create "entertaining video" for Live PD; and (2) using excessive force to create "entertaining video" for Live PD.[32]   To establish County liability under Section 1983, Plaintiffs must prove three (3) elements, in addition to the underlying claim of a constitutional violation: (1) an official policy or

---

[32]  *Id.* at ¶¶ 15, 228.

custom; (2) promulgated by a County policymaker; (3) that was the "moving force" behind the violation of Plaintiffs' constitutional rights. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). These three (3) elements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Id.* A county or municipality may not be held strictly liable for the acts of its non-policy-making employees under a *respondeat superior* theory. *Id.*

The pleadings must identify "a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 579. "[A] plaintiff must initially allege that an official policy or custom 'was a cause in fact of the deprivation of rights inflicted.'" *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (quoting *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994)); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Furthermore, the plaintiff must plead the description of a policy or custom and its relationship to the underlying constitutional violation with specificity; conclusory allegations are not enough to withstand a motion to dismiss. *See Piotrowski*, 237 F.3d at 579–80; *see also Spiller*, 130 F.3d at 167 ("The [plaintiffs'] description of a policy or custom and its relationship to the underlying constitutional violation, moreover cannot be conclusory; it must contain specific facts."). The court is "not bound to accept as true a [plaintiff's] legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 283 (1986). Plaintiffs must also assert that the policy or custom at-issue was adopted with deliberate indifference to the constitutional rights of the government entity's citizens. *City of Canton v. Harris*, 489 U.S. 378, 387–91 (1989). In addition, "allegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992).

First, Plaintiffs have not alleged a direct causal link between the purported County policy or custom of engaging in police chases for the purposes of Live PD and Ambler's alleged constitutional deprivation. There are no allegations that Ambler suffered any injuries as a direct result of Deputy Johnson's pursuit of him after he failed to pull over.[33] There are also no allegations that the pursuit of Ambler was "a cause in fact of the deprivation of rights inflicted."[34] Plaintiffs allegations of excessive force in violation of the Fourth Amendment are solely based on Deputy Johnson's and Deputy Camden's interactions with Ambler **after** the pursuit ended.[35] As a result, Plaintiffs' allegations  of a County policy or custom relating to police pursuits does not sufficiently establish *Monell* liability against the County.

Plaintiffs' allegations that there is a County policy or custom of using excessive force to create "entertaining video" for Live PD also fails to satisfy the requirements of *Monell* liability. In order to establish the existence of a County policy or custom and be successful on their *Monell* claim, Plaintiffs must demonstrate that there is a **pattern of similar constitutional violations**. *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).  "A successful showing of such a pattern '**requires similarity and specificity**; [p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to **the specific violation in question**.'"  *Hicks-Fields v. Harris Cty., Tex.*, 860 F.3d 803, 810 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) and *Davis*, 406 F.3d at 383) (emphasis added).  "While the specificity required should not be exaggerated, our cases require that the **prior acts** be fairly similar to what ultimately transpired."  *Id.* (citing *Davis*, 406 F.3d at 383) (emphasis added).

---

[33] *See id.* at ¶ 137.

[34] *Id.*

[35] *Id.* at ¶¶ 137–200.

The only prior incidents of excessive force "for the purposes of Live PD" alleged by Plaintiffs here are:

- WCSO deputies allegedly breaking down a door to arrest a suspect in his home;[36] and

- WCSO deputies allegedly using flash-bang grenades to arrest a suspect at home.[37]

Even when taken as true (which Defendant would argue are mischaracterized), these incidents are not sufficiently similar to Deputy Johnson's or Deputy Camden's interactions with Ambler. Neither of these alleged incidents involved the use of a Taser or the arrest of a suspect who was fleeing from law enforcement officers, who was noncompliant with their instructions, and/or resisted being handcuffed. These are merely offerings of other alleged "bad or unwise acts" that are not comparable to the factual circumstances of the incident here.

Although Plaintiffs do describe another alleged incident in which Deputy Johnson and Deputy Camden used a Taser and physical strikes while attempting to retain a suspect,[38] the alleged incident **occurred months after** the incident at-issue here, and there are no allegations that the suspect there suffered any life-threatening injuries or death.[39] Thus, as with the other alleged incidents, this incident lacks the specificity and substantial similarity to the incident here to establish a pattern of similar constitutional violations of which the County (through Sheriff Robert Chody) would have been aware, much less deliberately indifferent to.

Furthermore, this isolated incident with Ambler, even if taken as true, is insufficient by itself to establish an official policy or custom. The Fifth Circuit has held that, "[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as

---

[36] *Id.* at ¶ 32.

[37] *Id.* at ¶ 33.

[38] *Id.* at ¶¶ 51–54.

[39] *Id.*

required for municipal § 1983 liability." *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir.) (en banc), *cert. denied*, 472 U.S. 1016 (1985).

Because Plaintiffs have insufficiently pled a County policy causally connected to the alleged incident at-issue, they have not satisfied all the required elements of their *Monell* cause of action.  As such, Plaintiffs' *Monell* cause of action should be dismissed as a matter of law.

## C.      The Complaint and Incorporated Video Fails to Demonstrate a Violation of Title II of the ADA

Plaintiffs have not sufficiently pled—and cannot based on the Austin Police Department body camera footage—any factual allegations which would give rise to a violation of Title II of the ADA.  Title II of the ADA provides that "no qualified individual with a disability, shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination of any such entity."  42 U.S.C. § 12132.  To state a claim under the ADA, Plaintiffs must show that (1) Ambler had a qualifying disability; (2) that he was denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination was by reason of his disability.  *Hale v. King,* 642 F.3d 492, 499 (5th Cir. 2011); *Hainze v. Richards*, 207 F.3d 795, 799–800 (5th Cir. 2000).  This cause of action fails on multiple grounds, each sufficient on its own to warrant dismissal.

First and foremost, Plaintiffs' ADA cause of action fails to overcome the *Hainze* exigent circumstances exception.  The Fifth Circuit has held that "Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life."  *Hainze*, 207 F.3d at 801.  The Fifth Circuit reasoned that:

"[Law enforcement personnel conducting in-the-field investigations already face the onerous task of frequently having to instantaneously identify, assess, and react to potentially life-threatening situations.  To require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an unnecessary risk to innocents."

*Id.*

The incident here falls within the *Hainze* exception.  As Plaintiffs' Complaint and the Austin Police Department body camera footage demonstrate, Deputy Johnson, Deputy Camden, and other law enforcement officers were responding to Ambler's fleeing from a traffic stop.[40] When the pursuit ended, after Ambler crashed his vehicle on multiple occasions, they attempted to secure the scene by restraining Ambler.[41]  Because Deputy Johnson and Deputy Camden were engaged in an "on-the-street response" and their alleged, complained-of conduct occurred prior to Ambler's restraint and the scene being secured, Title II of the ADA is inapplicable here.  Therefore, Plaintiffs' ADA cause of action fails as a matter of law.

Additionally, and alternatively, even if Title II of the ADA was applicable, Plaintiffs cannot satisfy the third element of their *prima facie* case.  Even further assuming that Ambler had a qualifying disability under the ADA (which is denied, but the County must consider for purposes of this Motion), Plaintiffs have not proffered a single allegation that any purported exclusion, denial of benefits, or discrimination was **by reason of** Ambler's disability.[42]  Nothing in the Complaint or the Austin Police Department body camera footage supports this necessary element of Plaintiffs' claim.  Therefore, for this independent reason as well, this claim fails as a matter of law.  *See, e.g.*, *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) (affirming

---

[40]  *Id.* at ¶¶ 121–122, 137; *see generally* Ex. A, Austin Police Department Body Camera Footage.

[41]  Pls.' Compl., ¶¶ 143–191; s*ee generally* Ex. A, Austin Police Department Body Camera Footage

[42]  *See* Pls.' Compl., ¶¶ 193–194, 236–242.

dismissal of ADA claim where there was "no indication that [plaintiff] was treated differently because of his disability."); *Hay v. Thaler*, 470 F. App'x 411, 418 (5th Cir. 2012) (affirming dismissal of ADA and RA claims because plaintiff failed to prove "that this alleged discrimination was by reason of his disabilities, and such a claim [was] not supported by any evidence in the record."); *Tuft v. Texas*, 410 F. App'x 770 (5th Cir. 2011) (affirming dismissal of ADA claim where there was "no evidence" plaintiff was discriminated against "by reason of his disability").

Lastly, and again in the alternative, Plaintiffs' ADA claim rests on the inaccurate allegation that standard handcuffs and not "big boy handcuffs" or "double handcuffs" were used to restrain Ambler.[43]  As the Austin Police Department body camera footage clearly depicts, law enforcement officers used two (2) sets of handcuffs—one (1) connected to the other—to restrain Ambler.[44]  The use of two (2) handcuffs allowed a greater distance between Ambler's handcuffed wrists than the use of a single set of handcuffs, which was needed to accommodate his size.[45]  Consequently, Plaintiffs cannot satisfy the second element of their *prima facie* case, and their ADA cause of action warrants dismissal for this reason as well.

## IV.   PRAYER

Based on the foregoing, the County prays the Court grant this Motion to Dismiss and order that all of Plaintiffs' claims against it be dismissed with prejudice.  The County also prays that the Court grant such other and further relief to which it is justly entitled.

---

[43] *See id.* at ¶ 193.
[44] *See* Ex. A, Austin Police Department Body Camera Footage, at 3:08–3:32, 5:40–5:58.
[45] *See id.*

Respectfully submitted,

*Larry J. Simmon*

**Larry J. Simmons – Attorney-in-Charge**
State Bar No. 00789628
Federal I.D. No. 18830
**Richard H. Grafton  – Of Counsel**
State Bar No. 08252800
Federal I.D. No. 19276
**Carmen Jo Rejda-Ponce – Of Counsel**
State Bar No. 24079149
Federal I.D. No. 1366666
**GERMER PLLC**
America Tower
2929 Allen Parkway, Suite 2900
Houston, Texas 77019
(713) 650-1313 –  Telephone
(713) 739-7420 –  Facsimile

**COUNSEL FOR DEFENDANT,**
**WILLIAMSON COUNTY**

## CERTIFICATE OF SERVICE

I certify that on the 8th day of December 2020, a copy of the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing to all counsel of record pursuant to the Federal Rules of Civil Procedure.

*CJ Rejda Ponce*

**Carmen Jo Rejda-Ponce**