## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **JAVIER AMBLER, SR., and MARITZA** | § | |
| **AMBLER, individually, on behalf of all** | § | |
| **wrongful death beneficiaries of JAVIER** | § | |
| **AMBLER, II, on behalf of the ESTATE OF** | § | |
| **JAVIER AMBLER, II, and as next friends of** | § | |
| **J.R.A., a minor child; and MICHELE BEITIA,** | § | |
| **as next friend of J.A.A., a minor child** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO 1:20-01068-LY** |
| | § | **JURY DEMANDED** |
| **WILLIAMSON COUNTY, TEXAS,** | § | |
| *Defendant*. | § | |

## DEFENDANT WILLIAMSON COUNTY, TEXAS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT

Defendant WILLIAMSON COUNTY, TEXAS ("County") files this Reply in Support of Its

Motion to Dismiss the Original Complaint of Plaintiffs Javier Ambler, Sr., Maritza Ambler,

and Michele Beitia (collectively, "Plaintiffs") to address the arguments raised in Plaintiffs'

Response,[1] and will respectfully show the Court as follows:

### I.     INTRODUCTION

Plaintiffs' Response does not alleviate the legal deficiencies identified in the County's

Motion to Dismiss.  While Plaintiffs are correct that they need not prove their claims at this

juncture, they must provide more than threadbare conclusions and blanket statements

masquerading as facts.  Plaintiffs' "we said it is so, therefore, it is so" approach, without further

factual enhancement, does not satisfy *Twombly* and *Iqbal*'s plausibility pleading standard.  The

pleading standard does not require strict proof, but it also does not allow Plaintiffs to obfuscate

---

[1] Dkt. No. 16.

their obligation to provide allegations of specific similar incidents to support their *Monell* claims and any allegations at all to support their claim that Deputy JJ Johnson ("Deputy Johnson") and Deputy Zachary Camden ("Deputy Camden")'s actions to restrain Decedent Javier Ambler II ("Ambler")  were "because of" his purported disabilities (and somehow not because Ambler fled from an appropriate traffic stop, led chase for twenty (20) minutes, and resisted their efforts to restrain him).

As fully briefed below, and for the reasons stated in its Motion to Dismiss, the County respectfully requests that the Court dismiss Plaintiffs' claims against it.

## II.   ARGUMENTS & AUTHORITIES

### A.   Plaintiffs Fail to Sufficiently Plead a Section 1983 *Monell* Cause of Action

Plaintiffs depreciate their requirement that, in order to establish a County policy or custom for the purpose of *Monell* liability, they must demonstrate a pattern of similar constitutional violations. *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).  Instead, they repeatedly recite other (alleged) vague and inflammatory "bad acts" to distract from their failure to identify examples of incidents "fairly similar" to that at issue here.  It is well settled that "[a] successful showing of such a pattern '**requires similarity and specificity**; [p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to **the specific violation in question**.'"  *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 810 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) and *Davis*, 406 F.3d at 383) (emphasis added).  "While the specificity required should not be exaggerated, our cases require that the **prior acts** be fairly similar to what ultimately transpired."  *Id.* (citing *Davis*, 406 F.3d at 383) (emphasis added).

In their Response, Plaintiffs clarify that their *Monell* cause of action is based on four (4) alleged policies:

1. that Deputy Johnson and Deputy Camden used excessive force at Sheriff Robert Chody ("Sheriff Chody")'s instruction and "in service of Live PD;"

2. that Sheriff Chody hired Deputy Johnson and Deputy Camden despite unidentified "red-flags" in their background;

3. that the County failed to train and supervise Deputy Johnson and Deputy Camden in some unknown regard; and

4. that Sheriff Chody ratified and approved Deputy Camden's and Deputy Johnson's uses of excessive force.[2]

However, Plaintiffs do not provide, either in their Complaint or in their Response, a pattern of sufficiently similar and specific constitutional violations to establish the existence of these alleged policies to satisfy *Monell.*

> **1.      Any *Monell* claim based on an alleged County policy or custom relating to vehicular chases should be dismissed.**

As an initial point, in its Motion to Dismiss, the County argued that Plaintiffs failed to allege a direct causal link between the purported policy of engaging in vehicular chases for the purposes of Live PD and Ambler's alleged constitutional deprivation.[3]   In their Response, Plaintiffs admit that Ambler was not injured by the chase itself, and, as a result, cannot satisfy the third required element for *Monell* liability.[4]   Therefore, any *Monell* claim based on alleged policy of improper or excessive vehicular chases must be dismissed.

> **2.      Plaintiffs have not alleged a pattern of similar constitutional violations relating to excessive force.**

---

[2] Response at 10.
[3]  Mot. to Dismiss at 9.
[4]  *See* Response at 11 n.3.

Plaintiffs' support for the alleged excessive force policy rests on misinterpretation of the Fifth Circuit's ruling in *Bennett v. Pippin* and a litany of purported "bad acts" that are not sufficiently similar to the incident here.

First, Plaintiffs improperly argue that they need not demonstrate a pattern of constitutional conduct because they allege Sheriff Chody personally encouraged the use of excessive force.[5] Plaintiffs misinterpret *Bennett v. Pipin* to support their proposition that a personal decision from the final policymaker—here, Sheriff Chody—is alone sufficient to establish County liability.[6] 74 F.3d 578 (5th Cir. 1996). *Bennett*'s holding is not so broad. Plaintiffs confuse satisfying the first element of a *Monell* claim—a County policy or custom—with completely satisfying all elements for *Monell* liability. The issue on appeal in *Bennett* was whether "the Sheriff's rape [of the plaintiff, a murder suspect] constituted the County's policy or custom under *Monell*[]." *Id.* at 585. The Court ruled that the Sheriff's personal conduct "were those of the County because his relationship with [plaintiff] grew out of the attempted murder investigation," which was within his sphere of authority. *Id.* at 586. The Court did not opine on the other elements of *Monell* because they were not at issue in the appeal. *See id.* at 585–86. In fact, Plaintiffs ignore the *Bennett's* Court description and quote of another one of its opinions stating that *Monell* liability attaches "provided that the other prerequisites for finding liability under [Section 1983] are satisfied." *Id.* at 586 (quoting *Turner v. Upton Cnty., Tex.*, 915 F.2d 133, 138 (5th Cir. 1990)).

Plaintiffs also ignore that *Bennett* is not comparable to the facts here. As stated above, the alleged constitutional violation in *Bennett* was based on the Sheriff's own rape of a murder suspect.

---

[5] *Id.* at 12.
[6] *Id.* at 11–12.

Here, there are no allegations that Sheriff Chody was personally involved in the vehicular pursuit of Ambler or the efforts to restrain him.

Second, Plaintiffs have not sufficiently alleged a pattern of specific and similar constitutional violations to establish a County policy or custom of excessive force.  Instead, Plaintiffs generally allege that the number of TASER incidents in the Williamson County Sheriff's Office ("WCSO") "doubled between 2017 (when Chody took office) and Ambler's March 2019 death."[7]  Without any more factual allegations, Plaintiffs expect the Court to make the incredible leap that these TASER incidents were all, or mostly: (1) constitutional violations and not appropriate and justified uses of force; and (2) factually similar to the incident involving Ambler. There are no factual allegations in Plaintiffs' Complaint or Response to support these inferences.

Plaintiffs also provide allegations of two (2) prior incidents in which WCSO deputies broke down a door to complete an arrest and then used a flash-bang grenade to complete another arrest. Plaintiffs do not, and reasonably cannot, claim that these alleged incidents are similar from Deputy Johnson and Deputy Camden's interactions with Ambler.

Simply, Plaintiffs' unsupported claims that County policy of similar, unconstitutional excessive force exists is not enough to satisfy *Twobly* and *Iqbal*'s pleading standard.

> **3.**     **Plaintiffs have not alleged a pattern of similar constitutional violations in Deputy Johnson's and Deputy Camden's respective backgrounds.**

Plaintiffs provide nothing but conclusions to support their claim that the County (through Sheriff Chody) had a policy of hiring deputies with alleged "known histories of excessive force and dishonesty," specifically Deputy Johnson and Deputy Camden.[8]  As with their excessive force policy claim, Plaintiffs simply declare that because they state such a hiring policy exists, it,

---

[7]  *Id.* at 12.
[8]  *Id.* at 15.

therefore, must exist; never mind that Plaintiffs do not provide a single example or anecdote to identify these alleged "troubling histories" of Deputy Johnson and Deputy Camden.  Without any factual support, Plaintiffs ask the Court to make the several large inferential leaps—that these unspecified "troubling histories" involved allegations of multiple constitutional violations, that those allegations were true, that those constitutional violations were similar to the incident with Ambler, that Deputy Johnson and Deputy Camden therefore had a propensity to commit similar constitutional violations in the future, and that Sheriff Chody was deliberately indifferent to their propensities.  Plaintiffs have provided no bases to support these inferences and the Court need not accept threadbare allegations as truth.   These naked allegations are insufficient to plead the existence of a County policy of hiring deputies with histories of using unconstitutional excessive force.

      **4.**      **Plaintiffs have not alleged a pattern of the County failing to train or supervise Deputy Johnson and Deputy Camden.**

As with their other alleged policies, Plaintiffs stand on the argument that, because they alleged Deputy Johnson and Deputy Camden were inadequately trained and supervised, it must be so.[9]  However, yet again, Plaintiffs do not offer any factual allegations revealing a pattern of prior conduct or unconstitutional excessive force incidents involving Deputy Johnson or Deputy Camden.  There are no factual allegations displaying an "obvious" "need for more or different training."  *Morris v. Dallas Cnty., Tex.*, 960 F.Supp.3d 665, 684 (N.D. Tex. 2013).  Plaintiffs' allegation that there was a general increase use of TASERs, as discussed, above, does not automatically equate to unconstitutional use of force or a "so obvious" need or more or different

---

[9]  The allegation that the WCSO changed the standards of its policy training academy is immaterial because Plaintiffs do not allege that either Deputy Johnson or Deputy Camden participated in this academy.

training and supervision.  Without any sufficiently similar and specific factual allegations to demonstrate a pattern of similar constitutional violations, this *Monell* claim must be dismissed.

###### 5.    Plaintiffs have not alleged an "extreme factual situation" to support a ratification claim.

Plaintiffs admit that the theory of ratification to support County liability is "limited to 'extreme factual situations.'"[10]  The Fifth Circuit has made clear that "[o]therwise, unless conduct is 'manifestly indefensible,'" a policymaker's mistaken defense of a subordinate who is later found to have broken the law is not ratification chargeable to the municipality."  *Covington v. City of Madisonville, Tex.*, 812 F. App'x 218, 228 (5th Cir. 2020); *see also Coon v. Ledbetter*, 780 F.2d 1158, 1161–62 (5th Cir. 1986) (holding sheriff's defense of deputies premised upon his acceptance of their version of events did not equate to county policy approving reckless police behavior).

*Covington*—a case cited by Plaintiffs—exemplifies the extreme circumstances to which ratification may survive a motion to dismiss.  In *Covington*, the Fifth Circuit found that the district court erred in dismissing the ratification claim where the plaintiff alleged that the police chief had personal knowledge of and was personally involved in covering up a police officer's illegal actions of planting drugs on plaintiff.  *Covington*, 812 F. App'x at 228–229.

Such extreme conduct has not been pled here.  Plaintiffs' allegations that Sheriff Chody praised Deputy Johnson in a subsequent podcast (no mention of Deputy Camden is made) at most only amount to Sheriff Chody accepting his deputies' version of events.  Accordingly, Plaintiffs' *Monell* cause of action fails on this theory as well.

### B.    Plaintiffs Fail to Sufficiently Plead a Violation of Title II of the ADA

Plaintiffs also support their ADA claim with the arguments akin to "because they say it is

---

[10]  Response at 19 (citing *Culbertson v. Lykos*, 790 F.3d 608, 622 (5th Cir. 2015)).

violation, it must be so."

First, Plaintiffs do not deny that the *Hainze* exigent circumstances exception applies in situations which officers have not yet secured a scene of an in-the-field investigation. *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000). Instead, to overcome this exception, they cursorily argue that the scene with Ambler was secured because he "surrendered." This argument is in stark contrast to the Austin Police Department body camera footage, which demonstrates that Ambler was still moving, not complying with the deputies' instructions, and resisting efforts to restrain him.[11] Plaintiffs' unsupported claim that the scene was secured does not mean it was so and cannot overcome publicly available information to the contrary.

Additionally, and alternatively, like their Complaint, Plaintiffs' Response does not address the second element of their *prima facie* cases under the ADA. The Plaintiffs have not proffered any allegations to support their claim that any alleged denial of an accommodation was **because of or by reason of** Ambler's disability. *See Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012); *Hay v. Thaler*, 470 F. App'x 411, 418 (5th Cir. 2012); *Tuft v. Texas*, 410 F. App'x 770 (5th Cir. 2011). They simply proclaim that Ambler was denied accommodations and ask the Court to assume, with no basis whatsoever, that the denial was "because of" Ambler's alleged disabilities. Such conclusions and uncorroborated inferences do not satisfy Plaintiffs' pleading requirements.

### III. PRAYER

Based on the foregoing, and the arguments raised in the County's Motion to Dismiss, the County prays the Court grant its Motion to Dismiss and order that all of Plaintiffs' claims against it be

---

[11] As discussed in the County's Response to Plaintiffs' Motion to Strike the Video (filed contemporaneously with this Reply), the video is central to Plaintiffs' claims, contains audio, and was unedited by the County.

dismissed with prejudice.  The County also prays that the Court grant such other and further relief to which it is justly entitled.

Respectfully submitted,

**Larry J. Simmons – Attorney-in-Charge**
State Bar No. 00789628
Federal I.D. No. 18830
**Richard H. Grafton – Of Counsel**
State Bar No. 08252800
Federal I.D. No. 19276
**Carmen Jo Rejda-Ponce – Of Counsel**
State Bar No. 24079149
Federal I.D. No. 1366666
**GERMER PLLC**
America Tower
2929 Allen Parkway, Suite 2900
Houston, Texas 77019
(713) 650-1313 –  Telephone
(713) 739-7420 –  Facsimile

**COUNSEL FOR DEFENDANT,
WILLIAMSON COUNTY**

## CERTIFICATE OF SERVICE

I certify that on the 22nd day of January 2021, a copy of the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing to all counsel of record pursuant to the Federal Rules of Civil Procedure.

**Carmen Jo Rejda-Ponce**