UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **JAVIER AMBLER, SR., and MARITZA AMBLER, individually, on behalf of all wrongful death beneficiaries of JAVIER AMBLER, II, on behalf of the ESTATE OF JAVIER AMBLER, II, and as next friends of J.R.A., a minor child; and MICHELE BEITIA, as next friend of J.A.A., a minor child,**<br>*Plaintiffs*<br><br>**v.**<br><br>**WILLIAMSON COUNTY, TEXAS,**<br>*Defendant* | §<br>§<br>§<br>§<br>§<br>§  Case No.  1-20-CV-1068-LY<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**O R D E R**

Before the Court are Plaintiffs' Motion to Strike Defendant's Exhibit A, filed December 22, 2020 (Dkt. 14); Defendant's Response, filed January 22, 2021 (Dkt. 29); and Plaintiffs' Reply, filed January 29, 2021 (Dkt. 32). The District Court referred the motion and related filings to the undersigned for disposition, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

**I.   General Background**

The following is a summary of Plaintiffs' allegations in their Complaint. Dkt. 1. On March 28, 2019, at approximately 1:23 a.m., Javier Ambler II, a 40-year-old Black man who suffered from congestive heart failure and obesity,[1] was driving home in Williamson County, Texas. After Ambler failed to dim his high-beam headlights, Williamson County Sheriff's Deputy JJ Johnson

---

[1] Ambler weighed over 400 pounds.

1

attempted to pull him over. After Ambler failed to pull over, Johnson engaged in a 20-minute car chase until Ambler lost control of his car and crashed. *Id.* ¶ 124. Johnson was accompanied by a "Live PD"[2] camera crew who filmed the chase and ensuing events.

Johnson stopped his squad car near the scene of the crash, drew his gun, and ordered Ambler to get out of his car. Plaintiffs allege that Ambler immediately complied and held up his hands to show he was unarmed and not a threat. *Id.* ¶ 144. Johnson then drew his Taser and yelled at Ambler to "get on the ground." *Id.* ¶ 150. Plaintiffs allege that Ambler tried to comply but was unable to move as fast as Johnson wanted due to his disabilities. Johnson then fired his Taser at Ambler, and Ambler collapsed to the ground. Williamson County Sheriff Deputy Zachary Camden, who also was accompanied by a Live PD camera crew, then arrived at the scene. Plaintiffs allege that Camden used his Taser on Ambler for a second time. Johnson and Camden (the "Officers") used their Tasers on Ambler a third time and screamed at him to roll over onto his stomach so they could handcuff him behind his back. Plaintiffs allege that Ambler explained that he could not lie on his stomach because of his disabilities, and gasped: "I can't breathe." *Id.* ¶ 170. Ignoring Ambler's pleas, the Officers again ordered him to lie "flat on your stomach," and used their Tasers on Ambler for a fourth time. *Id.* ¶ 187. Plaintiffs allege that the Officers then put a knee into Ambler's back and handcuffed him, inhibiting his breathing and forcing his body face-down into the pavement. After Ambler stopped breathing, EMS arrived and took him to the hospital. Ambler died shortly thereafter. An autopsy found that Ambler died of "congestive heart failure and cardiovascular disease in combination with forcible restraint." *Id.* ¶ 201. The medical examiner deemed Ambler's death a homicide. *Id.* ¶ 202.

---

[2] In 2018, the County entered into a contract to produce a television program called "Live PD." Dkt. 1 ¶ 16. Live PD producers and camera operators ride with officers from police departments and record their activities for broadcast.

As noted, the car chase, Ambler's arrest, and his last moments alive all were filmed by the Live PD camera crews. However, after Ambler's death, those recordings "disappeared." *Id.* ¶ 212. Subsequently, a Williamson County Grand Jury indicted former Williamson County Sheriff Robert Chody for destroying evidence related to Ambler's case, including the video recordings made by Live PD. *Id.* ¶ 213.

On October 25, 2020, Ambler's family filed this suit on his behalf against Williamson County under the Civil Rights Act, 42 U.S.C. § 1983, and Title II of the Americans with Disabilities Act ("ADA"). Plaintiffs allege that the Officers used excessive force in violation of the Fourth Amendment to the United States Constitution. Plaintiffs also allege that the Officers violated Title II of the ADA by intentionally failing to provide Ambler the reasonable accommodations that were needed and available to allow Ambler to receive the benefits of Williamson County's programs and services.

On December 8, 2020, Defendant filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs' § 1983 excessive force and ADA claims fail to allege a plausible claim for relief. In support of its Motion, Defendant relies on a video that was posted on the website of local news station FOX 7 Austin.[3] Ex. A to Dkt. 13 ("Video" or "Exhibit A"). Defendant describes the Video as "body camera footage from an Austin Police Department officer who was present during a portion of the incident at issue." Dkt. 13 at 3 n.1. Defendant argues that the District Court should take judicial notice of the Video when the Court rules on the Motion to Dismiss because the Video "is a matter of public record and central to Plaintiffs' claims." *Id.* Specifically, Defendant states: "To the extent Plaintiffs' factual allegations are contradicted by the Austin Police Department body camera footage (that is public record and central to Plaintiffs'

---

[3] https://fox7austin.com/video/692989.

3

Complaint), the Court must reject Plaintiffs' allegations and rely on the facts depicted in the video recordings." Dkt. 13 at 7.

Plaintiffs argue that the Video is not a matter of public record and cannot be judicially noticed at the motion to dismiss stage. Plaintiffs contend that the Video has been heavily redacted, edited,[4] and is incomplete, in that it shows "some, but not all, of the encounter between Ambler and Deputies Johns and Camden." Dkt. 14 at 6.[5] Thus, Plaintiffs argue, it would be improper to take judicial notice of the Video because it does not meet the requirements of Federal Rule of Evidence 201(b). Accordingly, Plaintiffs argue that the Video should be stricken from the record.

## II.  Legal Standards

In determining whether to strike the Video, the Court applies the following legal standards.

### A.  Rule 12(b)(6)

When reviewing a motion to dismiss under Rule 12(b)(6), courts must "accept as true the well-pled factual allegations in the complaint, and construe them in the light most favorable to the plaintiff." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). In addition, "[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001).

In determining whether a plaintiff has alleged sufficient facts to survive a motion to dismiss, "the factual information to which the court addresses its inquiry is limited to the (1) [ ] facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial

---

[4] Plaintiffs also argue that the Video should be stricken because it contains no audio. Defendant disputes this, and Plaintiffs did not respond to Defendant's contention. The Court need not address this issue because it agrees with Plaintiffs that the Video is not the type of evidence that can be judicially noticed at the Rule 12(b)(6) stage.

[5] Plaintiffs contend that the only video to capture the full encounter between Ambler and the police was the video recorded by Live PD, which allegedly was destroyed by Chody.

notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In addition, the court also may consider documents attached to a defendant's motion to dismiss "that are referred to in the complaint and are central to the plaintiff's claims." *Walker*, 938 F.3d at 735.

### B. Federal Rule of Evidence 201

Federal Rule of Evidence 201(b) provides that courts "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Rule 201 "authorizes the court to take notice only of 'adjudicative facts,' not legal determinations." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998). Judicial notice may be taken of "matters of public record" that are not subject to reasonable dispute. *Walker*, 938 F.3d at 735; FED. R. EVID. 201(b). The court's notice, however, is limited to the existence of the document, "not to prove the truth of the documents' contents." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996).

The power to take judicial notice "must be exercised by courts with caution. Care must be taken that the requisite notoriety exists. Every reasonable doubt upon the subject should be resolved promptly in the negative." *Brown v. Piper*, 91 U.S. 37, 43 (1875). The burden is on the party seeking judicial notice to show that these requirements have been satisfied. 21B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 5108 (2d ed. 2020).

### III.   Analysis

Defendant argues that the District Court should consider Exhibit A when ruling on Defendant's Motion to Dismiss because it is "central to Plaintiffs' claims" and "a matter of public record" that can be judicially noticed. Dkt. 29 at 2.

## A. The Complaint

First, Defendant argues that the District Court should consider Exhibit A because it is central to Plaintiffs' claims. The District Court, however, may consider only documents attached to a defendant's motion to dismiss "that are referred to in the complaint and are central to the plaintiff's claims." *Walker*, 938 F.3d at 735. Plaintiffs' Complaint does not reference Exhibit A; rather, Plaintiffs' Complaint refers to the video filmed by Live PD, which allegedly has been destroyed. *See* Dkt. 1 ¶¶ 211-13. "Simply because a video that captured the events complained of in the complaint exists does not transform that video into a 'document' upon which the complaint is based." *Slippi-Mensah v. Mills*, No. 1:15-CV-07750-NLH-JS, 2016 WL 4820617, at *3 (D.N.J. Sept. 14, 2016). Because Exhibit A was not "incorporated into the Complaint by reference," *Tellabs*, 551 U.S. at 322, the undersigned Magistrate Judge concludes that it should not be considered by the District Court when reviewing the Motion to Dismiss. *See Turner v. Byer*, No. 2:17-CV-1869-EFB P, 2020 WL 5518401, at *1 (E.D. Cal. Sept. 14, 2020) ("As plaintiff points out, the video is not part of the complaint and thus is extrinsic material not properly considered in determining whether the allegations of the complaint are sufficient to state a claim for relief."), *R. & R. adopted*, 2020 WL 6582267 (E.D. Cal. Nov. 10, 2020); *Smith v. City of Greensboro*, No. 1:19CV386, 2020 WL 1452114, at *3 (M.D.N.C. Mar. 25, 2020) (finding that a police camera video attached to defendant's motion to dismiss was not central to plaintiff's complaint where complaint made "no express mention of the video").

Moreover, as Defendant acknowledges in its Response, the Video captures only part of the underlying incident and merely "provides one (1) officer's perspective of the incident at issue." Dkt. 29 at 4. While the Video may be central to Defendant's defense in this case, Defendant has failed to demonstrate that the Video is central to Plaintiffs' claims. *See Scanlan v. Tex. A&M Univ.*,

343 F.3d 533, 537 (5th Cir. 2003) (finding that partial report attached to defendant's motion was more central to defendant's defenses); *Engerat v. Quincy Bioscience, LLC*, No. 1:19-CV-183-LY, 2019 WL 4962597, at *3 (W.D. Tex. Oct. 8, 2019) ("Defendant has failed to show how a reference to a Study administered by the Defendant in one of its own advertisements is central to Plaintiffs' claims in this case."), *R. & R. adopted*, 2020 WL 504660 (W.D. Tex. Jan. 9, 2020); *Slippi-Mensah*, 2016 WL 4820617, at *3 (declining to consider dashboard video footage of traffic stop on motion to dismiss where video encompassed only one part of events from which plaintiff's claims arose). Based on the foregoing, the Court finds that the Video was neither "referred to in the complaint" nor "central to the plaintiff's claims." *Walker*, 938 F.3d at 735.

**B. Judicial Notice**

Defendant also argues that the District Court should take judicial notice of Exhibit A because it is "a matter of public record," referring to the FOX Austin 7 website. Dkt. 13 at 3 n.1.[6]

Courts may take judicial notice of matters of public record when deciding a motion to dismiss. *See Walker*, 938 F.3d at 735. The Fifth Circuit has found it proper to judicially notice certain public records, such as court proceedings and rulings; decisions of governmental agencies; arbitration records; and published reports of administrative agencies.[7] "For purposes of a motion to dismiss,

---

[6] In support of this argument, Defendant contends that: "On at least (1) occasion, a court in this District has taken judicial notice of a news video found online," citing *Ayala v. Aransas Cnty.*, No. 2:15-CV-335, 2018 WL 10373638, at *2 (S.D. Tex. Jan. 16, 2018). Defendant is mistaken. First, the Southern District of Texas, not the Western District of Texas, issued the opinion in *Ayala*. Second, the *Ayala* court did not take judicial notice of a news video posted on the internet, but rather considered the video when ruling on a Rule 12(c) motion because it was "referenced in [plaintiff's] complaint." *Id.* The court did take judicial notice of "public records regarding the lawsuits filed in the Southern District of Texas." *Id.*

[7] *See, e.g.*, *Caha v. U.S.*, 152 U.S. 211, 222 (1894) (taking judicial notice of rules and regulations prescribed by interior department); *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 688 n.9 (5th Cir. 2020) (taking judicial notice of arbitration order); *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020) (taking judicial notice of court judgments and opinions); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (taking judicial notice of publicly available documents and transcripts produced by Food and Drug Administration); *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996) (taking judicial notice of filings with Securities and Exchange Commission).

however, matters of public record do not include all documents which *may* be accessible to the public." *Engerat*, 2019 WL 4962597, at *4 (quoting *In re Rockefeller Ctr. Props., Inc., Secs. Litig.*, 184 F.3d 280, 293-94 (3d Cir. 1999)). Public records "are typically government-provided records and a commercial website is not a public record." *Id*. (citation omitted).

Even assuming that the Video qualifies as a matter of public record,[8] a court may take judicial notice only of those matters contained in public records that are "not subject to reasonable dispute." FED. R. EVID. 201(b). Here, Plaintiffs dispute that the "heavily edited" Video accurately captures the entire encounter between Ambler and the police. Thus, the Video is not a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," as required by Rule 201. *See Withrow v. Miller*, 348 F. App'x 946, 948 (5th Cir. 2009) ("Because it was subject to reasonable dispute whether the filed documents were the confiscated documents, the issue was not susceptible to judicial notice."); *Scanlan*, 343 F.3d at 537 (concluding that it would be improper to take judicial notice of university report on bonfire collapse attached to defendant's motion to dismiss where report was incomplete and disputed by plaintiffs).

Finally, Defendant asks the District Court to take judicial notice not only of the fact that the Video exists, but also of its contents, in order to rebut Plaintiffs' allegations that the Officers used

---

[8] The Video does not fit into any of the standard categories of public documents. Rather, the Video was posted on a local news station's website. Courts routinely have declined to take judicial notice of facts asserted in news reports and newspapers because they are "not a source whose accuracy cannot be questioned." *Amos v. Cain*, No. 4:20-CV-7-DMB-JMV, 2020 WL 6688864, at *5 (N.D. Miss. Nov. 12, 2020); *see also Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 894 F.3d 235, 245 (6th Cir. 2018) (finding that district court did not abuse its discretion by refusing to take judicial notice of three news reports); *Compassion Over Killing v. U.S. Food & Drug Admin.*, 849 F.3d 849, 852 n.1 (9th Cir. 2017) (declining to notice newspaper articles); *Estate of Lockett ex rel. Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir. 2016) (declining to take judicial notice of newspaper article for truth of matter asserted), *cert. denied*, 137 S. Ct. 2298 (2017); *United States v. Charles*, 62 F.3d 395, *3 n.5 (5th Cir. 1995) (noting that district court declined to take judicial notice of prosecutor's statements reflected in newspaper article); *Cofield v. Ala. Pub. Serv. Comm'n*, 936 F.2d 512, 517 (11th Cir. 1991) (finding that court erred in taking judicial notice of newspaper story because it is not a source of reasonably indisputable accuracy).

excessive force and demonstrate that their behavior was reasonable. For example, Defendant states: "To the extent Plaintiffs' factual allegations are contradicted by the Austin Police Department body camera footage (that is public record and central to Plaintiffs' Complaint), the Court must reject Plaintiffs' allegations and rely on the facts depicted in the video recordings." Dkt. 13 at 7.[9] This clearly exceeds the purview of judicial notice. *See, e.g.*, *Lovelace*, 78 F.3d at 1018 (finding that public disclosure documents filed with the SEC "should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents"). Such weighing of evidence outside of the pleadings is beyond the usual purposes of judicial notice at the motion to dismiss stage, and is more appropriately is reserved for summary judgment[10] or trial. *See Turner*, 2020 WL 5518401, at *1 (denying request to take judicial notice of police video on motion to dismiss for purpose of defeating excessive force claim); *Smith*,

---

[9] *See also* Dkt. 13 at 5 ("Contrary to Plaintiffs' allegations, the Austin Police Department body camera footage shows that two (2) sets of handcuffs were used to restrain Ambler due to his physical stature—one (1) set linked to the other to provide additional distance between Ambler's wrists."); *id.* ("[C]ontrary to Plaintiffs' allegations, the Austin Police Department body camera footage shows that Emergency Medical Services ("EMS") was called within twenty (20) seconds from the moment Ambler was handcuffed.").

[10] In support of its argument that the District Court should consider the Video when ruling on the Motion to Dismiss, Defendant cites *Scott v. Harris*, 550 U.S. 372 (2007), and *Poole v. City of Shreveport*, 691 F.3d 624, 631 (5th Cir. 2012). In *Scott*, a motorist brought a § 1983 action against county deputy alleging excessive force in violation of his Fourth Amendment rights during a high-speed chase. In response, the deputy filed a motion for summary judgment based on an assertion of qualified immunity and attached a videotape of the chase as supporting evidence. 550 U.S. at 379. The videotape told "quite a different story" from the one recounted by plaintiff. *Id.* There were "no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened." *Id.* Under these facts, the Court held that the Court of Appeals should have "viewed the facts in the light depicted by the videotape" because plaintiff's version of events was "so utterly discredited by the record." *Id.* at 380. Similarly, in *Poole*, the Fifth Circuit held that a plaintiff failed to demonstrate that an officer used excessive force where a videotape submitted in support of the defendant's motion for summary judgment directly contradicted plaintiff's allegations. *Id.*, 691 F.3d at 633. Relying on *Scott*, the court held that "summary judgment does not require us to accept absurd factual allegations that are contradicted by videotape evidence." *Id.* These cases involve the consideration of videotape evidence introduced at summary judgment, not whether such evidence should be judicially noticed at the motion to dismiss stage. Therefore, Defendant's reliance on these cases is misplaced. *See also Allen v. Hays*, 812 F. App'x 185, 189 (5th Cir. 2020) (noting that motion to dismiss was converted into motion for summary judgment where district court considered evidence outside pleadings, including police body camera videos).

2020 WL 1452114, at *3 (declining to take judicial notice of police video where defendant sought to use video to challenge plaintiffs' version of facts and show officer's behavior was reasonable); *Knickerbocker v. United States Dep't of Interior*, No. 116-CV-01811-DAD, 2018 WL 836307, at *6 (E.D. Cal. Feb. 13, 2018) (declining to take judicial notice of police video at motion to dismiss stage where government "requests the court take judicial notice of the contents of the video to purportedly show that the defendant rangers did not employ excessive force").

### IV.   Conclusion

Based on the foregoing, the undersigned Magistrate Judge finds that it would be inappropriate for the District Court to take judicial notice of the Video under Federal Rule of Evidence 201(b) when considering the Motion to Dismiss. Accordingly, Plaintiffs' Motion to Strike Exhibit A to Defendant's Motion to Dismiss (Dkt. 13-1) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Lee Yeakel.

**SIGNED** on February 25, 2021.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE