IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JAVIER AMBLER, SR. and MARITZA AMBLER, individually, on behalf of all wrongful death beneficiaries of JAVIER AMBLER, II, on behalf of the estate of JAVIER AMBLER, II, and as next friends of J.R.A. a minor child; and MICHELLE BEITIA, as next friend of J.A.A., a minor child,<br>　　　　　*Plaintiffs*<br><br>　　v.<br><br>MICHAEL NISSEN and CITY OF AUSTIN,<br>　　　　　*Defendants* | §§§§§§§§§§§§§§§§ Case No. 1:20-cv-1068-LY |

**O R D E R**

Now before the Court are Defendant Michael Nissen's Motion to Exclude Expert Testimony by Michael M. Baden, MD (Dkt. 159) and Motion to Exclude Expert Testimony of Roger A. Clark (Dkt. 161), both filed February 3, 2023; Plaintiff's Response in Opposition to Defendant Nissen's Motion to Exclude Expert Testimony by Roger A. Clark, filed March 15, 2023 (Dkt. 174-2); Plaintiffs' Response to Defendant Michael Nissen's Motion to Exclude Expert Testimony by Michael M. Baden, MD, filed March 17, 2023 (Dkt. 176); and Defendant's Reply briefs, both filed April 7, 2023 (Dkts. 181 and 182).[1]

Javier Ambler II died in law enforcement custody after a car chase. His family ("Plaintiffs") brings this suit against Austin Police Officer Michael Nissen and the City of Austin under the Civil Rights Act, 42 U.S.C. § 1983, and Title II of the Americans with Disabilities Act.

---

[1] The District Court referred all nondispositive and dispositive motions in this case to this Magistrate Judge for resolution or Report and Recommendation, respectively, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C to the Local Rules of the United States District Court for the Western District of Texas. Dkt. 144.

I. **Legal Standards**

A witness qualified as an expert may testify if:

> the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; the testimony is based in sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Rule 702 was amended to incorporate the principles articulated in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See* FED. R. CIV. P. 702, Adv. Comm. Notes (2000). Following *Daubert* and its progeny, trial courts act as gatekeepers, overseeing the admission of scientific and nonscientific expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Trial courts must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. In carrying out this task, courts have broad latitude in weighing the reliability of expert testimony for admissibility. *Kumho Tire*, 526 U.S. at 152. The court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*.

*Daubert* provides the analytical framework for determining whether expert testimony is admissible under Rule 702. *Kumho Tire*, 526 U.S. at 141. The *Daubert* framework includes many factors that can be used to determine the admissibility of expert testimony, including but not limited to whether the expert's theory or technique (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community. *See*

*Daubert*, 509 U.S. at 593-94. Not every *Daubert* factor will apply in every situation, and a court has discretion to consider other factors it deems relevant. *Kumho Tire*, 526 U.S. at 151-52.

Under these rules, a court may exclude evidence that is based on unreliable principles or methods or legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case. *Kumho Tire*, 526 U.S. at 150 (holding that gatekeeping inquiry must be tied to particular facts of case); *i4i Ltd. v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010) ("*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness."). Notwithstanding the testing of an expert's qualification, reliability, and admissibility, "the rejection of expert testimony is the exception rather than the rule." FED. R. CIV. P. 702, Adv. Comm. Notes (2000). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The proponent of expert testimony bears the burden of establishing its reliability. *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016).

## II.     Dr. Baden

Plaintiffs designate Michael Baden, M.D., a forensic pathologist, as an expert to testify about Ambler's cause of death. Nissen moves to exclude Baden's testimony on the basis that he (1) fails to provide academic support or methodology for his opinion, (2) is not qualified to render an opinion on law enforcement matters or Taser devices,[2] and (3) does not distinguish among the acts of the different officers involved in Ambler's arrest.

Baden received his medical degree from New York University School of Medicine in 1959 and has held licenses in anatomic pathology, clinical pathology, and forensic pathology for more

---

[2] Two Williamson County, Texas Sheriff's Office deputies were involved in Ambler's arrest, and Plaintiffs allege that they used a Taser device on him multiple times.

than 50 years. Dkt. 160-3 at 2. Baden trained in internal medicine and pathology at Bellevue Hospital and served as the Chief Medical Examiner of New York City and Co-Director of the New York State Police Medico-Legal Investigations Unit. Dkt. 176-1 at 2. He also has held teaching positions at Albert Einstein Medical School, Albany Medical College, New York University School of Medicine, New York Law School, and John Jay College of Criminal Justice, and has served as a consultant to several government agencies. *Id.* Baden has performed more than 20,000 autopsies during his career. *Id.* Based on his training, education, and experience, the Court finds that Baden is qualified as an expert in forensic pathology to render opinions on Ambler's cause of death.

Nissen contends that Baden's opinions should be excluded because he "relies almost entirely on *ipse dixit* and cites nary an academic source to support even so much as one of his methodologies, conclusions, or opinions." Dkt. 159 at 9. Baden states in his expert report that, in forming his opinion, he considered "the circumstances of death, of the scene findings, of the police reports, of medical history, of witness statements," as well as the "autopsy and toxicology findings." Dkt. 160-2 at 7. He also states that he "evaluate[d] the various possible causes of Mr. Ambler's death, eliminating those that were less likely, under these conditions, to cause his death – such as natural causes, drug overdose, excited delirium." *Id.*

The Court finds that Baden adequately explains his methodology and the sources on which he relied. *See United States v. Seale*, 600 F.3d 473, 490-91 (5th Cir. 2010) (holding that court did not err in admitting testimony of forensic pathologist who derived opinion from review of case evidence). Nissen's objections to Baden's methodology are more appropriate for cross-examination. *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration.").

Next, Nissen argues that Baden's testimony on Taser use and "whether Taser use caused certain injuries" to Ambler should be excluded. Dkt. 159 at 5. The Court agrees that Baden is not qualified to testify about the functionality of Taser devices or how many times Tasers were discharged because he has no demonstrated education or experience with such devices. *See Ricks v. City of Alexandria*, No. 12-cv-0349, 2014 WL 4274144, at *13 (W.D. La. Aug. 28, 2014) (excluding testimony of medical expert designated to testify on cause of death about how Taser device "mechanically operates"). The Court also finds that Baden is not qualified to testify on the physiological effect of a Taser. By his own admission, Baden is not an expert on Taser devices, and Plaintiffs offer no evidence that he has any education, training, or experience in electricity or its effects. *See Thomas v. City of Winnfield*, No. 08-cv-1167, 2012 WL 1255265, at *4 (W.D. La. Apr. 13, 2012) (excluding Baden's testimony on Taser devices because he lacked experience in "electricity specific" field), *rev'd on other grounds sub nom. Thomas v. Nugent*, 539 F. App'x 456 (5th Cir. 2013), *vacated by* 572 U.S. 1111 (2014). Plaintiffs aver that Baden "does not intend on proffering any opinions beyond that the TASER use contributed to the cause of death, which is well within his expertise" and supported by the medical examiner's autopsy report. Dkt. 176 at 15. Accordingly, the Court excludes any testimony from Baden on Taser use beyond his opinion that such use contributed to Ambler's cause of death, including the specific number of times Tasers were used on him or how such use contributed to his death.

Nissen also argues that Baden is not qualified to render an opinion on law enforcement matters. The Court agrees. In his expert report, Baden states that he disagrees with the conclusion in a Williamson County Sherriff's Office of Professional Standards report that the deputies used "objective reasonableness in the level of force used." Dkt. 160-2 at 4. He also states that Ambler only committed a "minor traffic violation." *Id.* at 6. Baden is not qualified to offer expert testimony

5

on matters of law enforcement and thus cannot offer his opinion on the force used by officers or the criminality of certain acts.

Similarly, the Court finds that Baden's testimony about Ambler's level of obedience is inadmissible. This is not a proper area for testimony from a forensic pathologist. Ambler's level of obedience or resistance is within the factfinder's lay knowledge and can be determined from the videos and other available evidence without specialized knowledge, training, or education. *See Anderson v. City of McComb*, 539 F. App'x 385, 388 (5th Cir. 2013) (the expert opinions were not considered because they "amounted to no more than the [expert's] personal interpretation of the evidence that the jury would hear and the [expert's] conclusions on the ultimate issues in the case"); *Williams v. City of Houston, Tex.*, No. H-16-3342, 2019 WL 2435854, at *6 (S.D. Tex. June 11, 2019) (excluding Clark's testimony about what video recordings show because it was within jury's lay knowledge).

Finally, Nissen argues that Baden's failure to differentiate among the actions of each officer involved in Ambler's arrest will confuse the jury. Baden is designated as an expert to testify about Ambler's cause of death and need not differentiate among the actions of each officer. Nissen may highlight this distinction on cross-examination.

### III.   Clark

Plaintiffs designate retired Los Angeles County Sheriff's Department lieutenant Roger Clark as an expert to testify about the reasonableness of the arresting officers' actions and the adequacy of the City's training and policies on excessive force. Nissen moves to exclude Clark's testimony because he is a "hired gun, willing to testify to anything his clients request of him." Dkt. 161 at 4. Nissen also objects to portions of Clark's testimony as improperly offering legal or medical opinions and speculating about individuals' states of mind.

Clark worked for the Los Angeles County Sheriff's Department from 1965 until 1993, when he became a self-employed police procedures consultant. While Nissen points out that Clark's testimony has been excluded by other courts, a review of those cases shows that his testimony was excluded because his experience was unrelated to the issue for which it was offered. *See, e.g.*, *Ayala v. Aransas Cnty.*, No. 2:15-CV-335, 2018 WL 9802070, at *2 (S.D. Tex. June 21, 2018) (excluding Clark's opinion on the "sound of a heavy duty flashlight hitting a human being"). The Court finds that Clark is qualified to testify as an expert in police practices and procedures. Dkt. 174-4 at 2-3. *See Olson ex rel. H.J. v. City of Burnet, Tex.*, No. A-20-CV-00162-JRN, 2021 WL 1289376, at *2 (W.D. Tex. Feb. 26, 2021) ("Clark's three decades in and around the field of law enforcement qualifies him by 'knowledge, skill, experience, training, or education' to testify about police practices and procedures in general.").

But the Court finds portions of Clark's opinions inadmissible here. Clark opines that the force used by Nissen and the Williamson County deputies who arrested Ambler was "unjustified, unnecessary and unreasonable," and that Nissen failed to intervene to stop "objectively unreasonable force." Dkt. 162-2 at 25. This testimony should be excluded because the statements are legal conclusions. An expert cannot offer legal conclusions on whether an officer's use of force was reasonable under the Fourth Amendment. *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003); *Olson*, 2021 WL 1289376, at *3 n.1 (collecting cases holding Clark's legal conclusions inadmissible); *Williams v. City of Houston, Tex.*, No. H-16-3342, 2019 WL 2435854, at *5 (S.D. Tex. June 11, 2019) (excluding Clark's opinions that officer used excessive force, his conduct was criminal, and he acted deliberately and without justification); *Rascon v. Brookins*, No. CV-14-00749-PHX-JJT, 2018 WL 739696, at *4 (D. Ariz. Feb. 7, 2018) (excluding Clark's testimony on legal opinions and conclusions). The Court does not agree, however, that all of Clark's opinions are inadmissible because his conclusion that Nissen used excessive force is

7

"implicit in every single one of Clark's opinions." Dkt. 161 at 8 n.35. *See* FED. R. EVID. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue.").

Nissen also objects to these portions of Clark's expert report as improperly opining on the mental states of the arresting officers:

- "Nissen knew that Ambler was a person with a disability who needed and was requesting an accommodation." Dkt. 162-2 at 26.

- "The only 'resistance' Nissen ever perceived was Ambler's efforts to keep from being crushed to death." *Id.*

- The deputies "would have heeded him if he had warned them of Ambler's labored breathing or the risk of positional asphyxia" *Id.*

- "Nissen had the opportunity to intervene and save Ambler's life from when he heard Ambler say he had congestive heart failure." *Id.* at 27.

- The officers "knowingly apply[ied] so much force to bring Ambler's hands behind his back that they broke his fingers." *Id.*

- "Nissen knew that putting pressure on Ambler's back and neck served no purpose other than to risk killing Ambler." *Id.*

- "[I]t was obvious from Nissen's perspective at the scene that Ambler was not attempting to stand up, much less flee, and so Nissen knew that putting pressure on Ambler's back and neck served no purpose other than to risk killing Ambler." *Id.*

An expert is in no "better position than the jury to draw conclusions about a defendant's state of mind." *Sanchez v. Gomez*, No. 17-CV-133-PRM, 2020 WL 3316990, at *11 (W.D. Tex. June 17, 2020) (quoting *Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007)); *see also Gobert v. Caldwell*, 463 F.3d 339, 348 n.29 (5th Cir. 2006) (stating that "expert testimony is only probative of what inferences [the defendant] could have made," not what he actually knew). Clark's testimony about what Nissen and the Williamson County deputies knew is inadmissible. But Clark may opine as to what a reasonable police officer in a similar position might have known or deduced from Ambler's conduct. *See Olson*, 2021 WL 1289376, at *5 (admitting expert testimony about what reasonable police officer in similar position would have noticed).

Nissen objects that these portions of Clark's testimony are medical opinions:

- Ambler was in "medical distress," his "medical condition was impairing his ability to breath and survive," and he was a "person with a disability who needed and was requesting an accommodation in order to avoid being seriously injured or killed." Dkt. 162-2 at 26, 30.

- Nissen had the opportunity to "intervene and save Ambler's life." *Id.* at 27.

- Being held in "the prone position prevented Ambler from supporting his own weight and impaired his breathing." *Id.*

- "Ambler was in obvious medical distress. The danger from positional asphyxiation was palpable." *Id.* at 28.

- Ambler was in medical distress from positional asphyxiation and Nissen's failure to acknowledge that reveals a fundamental error in his training. *Id.* at 30.

The Court agrees that this testimony must be excluded. Clark is not qualified to offer opinion testimony as to the interaction between Ambler's medical condition and the force used or Ambler's cause of death. *See Goode v. City of Southaven*, No. 3:17-CV-60-DMB-RP, 2018 WL 4691330, at *5 (N.D. Miss. Sept. 27, 2018) (excluding law enforcement expert's testimony about connection between prone restraint and positional asphyxia). Clark may testify that the force and restraint used on Ambler presented a danger of positional asphyxiation to the extent that this opinion is based on law enforcement training, policies, or procedures. *See id.* (admitting testimony on whether officers complied with law enforcement standards for positional asphyxia).

Finally, Nissen objects to Clark's testimony about the content of video recordings of Ambler's arrest. As stated, the content of the videos is within a factfinder's lay knowledge and therefore does not require specialized knowledge, training, or education. *See Anderson*, 539 F. App'x at 388; *Williams*, 2019 WL 2435854, at *6. Clark's description of the events in the videos are inadmissible.

## IV.   Conclusion

For the foregoing reasons, Defendant Michael Nissen's Motion to Exclude Expert Testimony by Michael M. Baden, MD (Dkt. 159) is **GRANTED IN PART** and **DENIED IN PART**. The Court **GRANTS** the Motion as to Baden's opinions on law enforcement matters, Ambler's level of obedience, and Taser use other than his opinion that such use contributed to Ambler's cause of death. The Motion is **DENIED** in all other respects.

The Motion to Exclude Expert Testimony of Roger A. Clark (Dkt. 161) is **GRANTED IN PART** and **DENIED IN PART**. The Court **GRANTS** the Motion as to Clark's opinions on mental states, the interaction between Ambler's medical condition and the force used, and video content, as well as Clark's legal conclusions as to whether the use of force was reasonable under the Fourth Amendment. The Motion is **DENIED** in all other respects.

**SIGNED** on July 18, 2023.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE